UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

August 17, 2023

LETTER TO ALL COUNSEL OF RECORD

Re: *Milline V. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
Civil No. 22-2094-BAH

Dear Counsel:

On August 19, 2022, Plaintiff Milline V.[1] ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case, ECF 8, and the parties' dispositive filings, ECFs 11 and 14.[2] I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will GRANT Defendant's motion and AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff protectively filed a Title II application for Disability Insurance Benefits ("DIB") on January 15, 2015,[3] and a Title XVI application for Supplemental Security Income ("SSI")

---

[1] The complaint lists Plaintiff's name as "Millie," but the administrative transcript makes clear that Plaintiff's first name is "Milline." ECF 8. The parties have both used "Milline" in their respective dispositive filings. ECFs 11 and 14. As such, the Court will use "Milline" and directs the Clerk to change Plaintiff's name on CM/ECF.

[2] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." Plaintiff here filed a brief. ECF 11. Though Defendant's filing is docketed as a brief, it is written as a motion for summary judgment. ECF 14. As such, I will refer to Defendant's filing as a motion for summary judgment.

[3] The parties and the ALJ all refer to January 15, 2015, as the date Plaintiff filed the application. Tr. 18; ECF 11, at 1; ECF 14-1, at 1. However, the application itself lists January 16, 2015, as the application date. Tr. 151. Because the parties and the ALJ use January 15, 2015, as the relevant application date, so too will the Court.

*Milline V. v. Kijakazi*
Civil No. 22-2094-BAH
August 17, 2023
Page 2

benefits on January 29, 2015, alleging a disability onset of January 1, 2011. Tr. 151–58. Plaintiff's claims were denied initially and on reconsideration. Tr. 104–08, 111–14. On June 8, 2017, an Administrative Law Judge ("ALJ") held a hearing. Tr. 37–59. Following the hearing, on November 22, 2017, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[4] during the relevant time frame. Tr. 18–32. The Appeals Council ("AC") denied Plaintiff's request for review. Tr. 1–6. Plaintiff then appealed to this Court, which remanded the case back to the SSA on March 23, 2020, pursuant to sentence four of 42 U.S.C. § 405(g). Tr. 695–706. On remand, the AC vacated the ALJ's prior decision, consolidated Plaintiff's claims with an SSI claim Plaintiff filed on March 6, 2020, and remanded the case back to the ALJ for further proceedings. Tr. 711. The ALJ held a second hearing on February 8, 2021. Tr. 632–55. On November 1, 2021, the ALJ again determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 604–25. The AC declined to review the November 1, 2021, decision, Tr. 590–93, so that decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. §§ 404.984, 416.1484, 422.210(a).

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See id.* at §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date." Tr. 607. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "cervical spine spondylosis, osteoarthritis; brachial radiculitis; left shoulder degenerative joint disease; osteoarthritis bilaterally at the knees; osteopenia; mixed tension headache and vascular migraine; and obstructive sleep apnea." *Id.* (citation omitted). At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant could occasionally lift or carry 10 pounds, frequently lift or carry less

---

[4] 42 U.S.C. §§ 301 et seq.

> than 10 pounds, stand/or walk with normal breaks for 2 hours in an 8 hour day, sit with normal breaks for about 6 hours in an 8 hour day, occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and she could never climb ladders, ropes, or scaffolds. Additionally, the claimant was limited to frequent fingering with her bilateral upper extremities, she must avoid concentrated exposure to temperature extremes and vibrations, and she could not be exposed to workplace hazards, such as unprotected heights or moving mechanical parts.

Tr. 610. After considering testimony from a vocational expert ("VE"), the ALJ determined that Plaintiff was unable to perform past relevant work as a general inspector (DOT[5] #609.684-010) or machine operator (DOT #920.685-078) but could perform other jobs that existed in significant numbers in the national economy. Tr. 622–25. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 625.

## III. LEGAL STANDARD

As noted, the scope of this Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *see also Britt v. Saul*, 860 F. App'x 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)) ("A disability determination must be affirmed so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence."). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("[Substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible

---

[5] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Milline V. v. Kijakazi*
Civil No. 22-2094-BAH
August 17, 2023
Page 4

without an adequate explanation of that decision by the [ALJ].").

IV. **ANALYSIS**

Plaintiff raises two main arguments on appeal, specifically that the ALJ erroneously: (1) evaluated Plaintiff's subjective complaints and (2) assessed Plaintiff's RFC. ECF 11, at 4–22. Under the subjective complaints section, Plaintiff argues that the ALJ improperly increased Plaintiff's burden of proof regarding the severity, persistence, and limiting effects of her symptoms in violation of *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020), and improperly failed to consider the extent to which Plaintiff could perform activities of daily living. *Id.* at 4–11. As to the RFC assessment, Plaintiff contends that the ALJ failed to address all necessary factors in assigning "limited" weight to Dr. Okigbo's opinions, failed to properly regard Dr. Okigbo's opinion that Plaintiff was unable to work, and failed to consider Plaintiff's impairments in combination. *Id.* at 11–22. Defendant counters that the ALJ properly: (1) evaluated Plaintiff's subjective complaints and activities of daily living; (2) considered the opinions of Dr. Okigbo; and (3) considered Plaintiff's combination of impairments. ECF 14-1, at 6–17. The Court addresses each of these arguments in turn.

A. The ALJ Properly Evaluated Plaintiff's Subjective Complaints.

The Court first considers Plaintiff's contention that the ALJ applied an improper standard in evaluating Plaintiff's subjective complaints by "improperly increasing her burden of proof" and by erroneously relying upon Plaintiff's daily activities. ECF 11, at 6–7. An ALJ properly analyzes a claimant's subjective complaints by using a two-part process. *See Craig*, 76 F.3d at 594–95 (discussing the two-part framework used in the Fourth Circuit). First, the ALJ must assess the objective medical evidence and determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b). If the claimant meets this threshold requirement, then the ALJ determines how the extent and severity of those symptoms affect the claimant's ability to work. *See id.* at §§ 404.1529(c), 416.929(c).

The Fourth Circuit has "consistently held that 'while there must be objective medical evidence of some condition that could reasonably produce the pain,'" this statement applies solely to the first step of the process. *Arakas*, 983 F.3d at 95 (quoting *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989)). As to the second step, "there need not be objective evidence of the pain itself or its intensity." *Id.* (quoting *Walker*, 889 F.2d at 49). In *Arakas*, the Fourth Circuit held that, "at the second step, the ALJ improperly discredited [the claimant]'s statements about the severity, persistence, and limiting effects of her symptoms because [the ALJ] did not find them to be 'completely consistent with the objective evidence.'" *Id.* at 96 (internal citations omitted). A claimant is "entitled to rely exclusively on subjective evidence" to prove the severity and extent of their symptoms. *Id.* (quoting *Hines v. Barnhart*, 453 F.3d 559, 563, 565 (4th Cir. 2006)). Accordingly, an ALJ engaging in the second step of the subjective complaint analysis may not "'improperly increase[ the claimant's] burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id.* (quoting *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017)). At the same time, however, "a claimant's

allegations about her pain" "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can be reasonably be expected to cause the pain the claimant alleges she suffers." *Craig*, 76 F.3d at 595.

Here, contrary to Plaintiff's assertion and to the facts in *Arakas*, the ALJ did not impermissibly raise Plaintiff's burden by requiring her to provide objective evidence of the extent of her symptoms. The ALJ properly determined that Plaintiff suffered from the severe medically determinable impairments of "cervical spine spondylosis, osteoarthritis; brachial radiculitis; left shoulder degenerative joint disease; osteoarthritis bilaterally at the knees; osteopenia; mixed tension headache and vascular migraine; and obstructive sleep apnea." Tr. 607. At the first step of the symptoms analysis, the ALJ properly determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 611. That finding is not in dispute. The ALJ went on to evaluate Plaintiff's symptoms and the extent to which they limited her capacity to work, and concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 607–11.

Contrary to Plaintiff's claim, this conclusion was not based on a lack of objective evidence supporting claims of severe pain. Rather, the ALJ weighed Plaintiff's subjective complaints against myriad evidence in the record documenting Plaintiff's pain-causing impairments including medical opinions in the record and Plaintiff's own statements. *See, e.g.*, Tr. 617 ("Other records indicate that rheumatoid arthritis pain was being controlled. More specifically, on October 4, 2016, Dr. Zan opined that right wrist mild synovitis indicated low disease activity."), 617–18 ("Rheumatoid arthritis remission achieved with monotherapy and/or resuming infusions as needed, as established by bloodwork, objective clinical examination findings with primary care and rheumatologist, and self-reports of improved joint pain to mild, resolved morning stiffness, and great energy are inconsistent with allegations of disability due to rheumatoid arthritis. . . . Subjective pain is considered within the context of this objective clinical evidence[.]"), 619–20 ("Pain complaints are not consistent with this [full] range of motion presentation. Full range of motion is more consistent with treatment records from the claimant's treating specialist sources showing improvement, with disease remission[.]"). This remains permissible under *Arakas*. *See John O. v. Kijakazi*, No. AAQ-21-01378, 2022 WL 2305255, at *5 (D. Md. June 27, 2022) ("[W]hile a plaintiff may rely exclusively on subjective evidence in proving this second part of the test, where objective medical evidence exists, the ALJ may consider it so long as objective evidence is not 'effectively required.'" (quoting *Arakas*, 983 F.3d at 95)). Indeed, the ALJ used such evidence in Plaintiff's favor as well, giving only partial weight to the opinion of State agency consultants because their finding that Plaintiff was capable of light work did not "properly account for evidence of the claimant's rheumatoid arthritis . . . nor for the claimant's subjective allegations of pain." Tr. 621. This analysis comported with both the applicable regulatory framework detailed in 20 C.F.R. §§ 404.1529 and 416.929, as well as the requirements of *Arakas*.

Plaintiff also argues that the ALJ failed to consider the extent to which she could perform daily activities and that the ALJ failed to explain how these activities support finding her not

disabled. ECF 11, at 7–11. "An ALJ may not consider the type of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original). Here, however, contrary to Plaintiff's assertion, the ALJ did consider the extent of Plaintiff's ability to perform daily activities. In summarizing Plaintiff's daily activities, the ALJ qualified the extent of those activities. *See e.g.*, Tr. 610 ("The claimant could not prepare *complicated* meals, but she could prepare *simple* food *every day within an hour*. The claimant *tried* to go out *3 times per week* for *short* walks. She estimated that she could walk *one block before resting for 15 minutes*. In contrast, the claimant shopped in stores *every 2 weeks for 2 hours at a time*." (emphasis added)), *id.* ("It was *difficult* to dress, bathe, and groom herself." (emphasis added)), *id.* ("The claimant spent time reading and watching television *every day*, although she reportedly did *less so than before*." (emphasis added)). To the extent that the record contained qualifications as to Plaintiff's description of her daily activities, the ALJ considered them in the decision.

The ALJ also provided sufficient explanation for the conclusion that Plaintiff's reported daily activities do not suggest a more limited RFC finding. The Fourth Circuit clarified in *Woods* that "the ALJ must adequately explain his reasoning; otherwise, [courts] cannot engage in a meaningful review." 888 F.3d at 693 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) ("Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion."). Here, Plaintiff argues that the ALJ "failed to explain how reading, preparing simple meals, ambulating, and shopping in stores is consistent with the ability to perform basic work activities, eight hours per day, five days per week." ECF 11, at 7. In the step three analysis,[6] the ALJ concluded that Plaintiff could "use the upper extremities for her daily activities, to include personal care, with pain, and shop for 2 hours at a time," Tr. 608, which offers a reasonable explanation, in combination with objective medical evidence, for the ALJ's RFC determination that Plaintiff could "occasionally lift or carry 10 pounds[ and] frequently lift or carry less than 10 pounds," Tr. 610.

However, the ALJ's conclusion that Plaintiff can "stand/or [sic] walk with normal breaks for 2 hours in an 8 hour day," Tr. 610, is less well supported. The ALJ's decision gave minimal attention to Plaintiff's oral testimony recounting the ability to walk or stand for only twenty-five minutes at a time, Tr. 651,[7] and her functional report statement that she can "walk one block before

---

[6] The Fourth Circuit has clarified that an ALJ's failure to discuss a claimant's limitations in the RFC analysis does not frustrate review if the ALJ did so elsewhere in the decision. *Britt*, 860 F. App'x at 262 ("We can conduct a meaningful review without making an administrative law judge repeat himself."). Here, the ALJ's consideration of Plaintiff's capacities at step three also applies to his RFC analysis.

[7] In answer to the ALJ's question, "How long are you able to walk?" Plaintiff replied, "About 10 feet, 25 minutes walk. After that I need to take rests." Tr. 651. The ALJ requested no clarification. *Id.* Though this exchange suggests some unresolved confusion at the hearing, Plaintiff does not make any argument relating to this apparent confusion or to the ALJ's "duty to explore all relevant

resting for 15 minutes," Tr. 610.  The ALJ did not attempt to reconcile the conflict between these statements and simply opted for the greater capacity, that Plaintiff could in fact walk for two hours in a workday.  Tr. 610.  Even assuming the ALJ erred in failing to reconcile the conflict in testimony, an RFC with more limitations on walking and standing—in line with the reports the ALJ disregarded—would have made no difference in subsequent steps of the disability analysis here.  When asked by the ALJ if there would be any difference in job availability at step five between a person who could walk or stand for two hours and one who could only do so for twenty to thirty minutes, the VE replied "[n]o change." Tr. 641–42.  Moreover, Plaintiff carries the burden on appeal of demonstrating how the ALJ's failure to include a specific limitation in the RFC is harmful and warrants remand.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency determination."); *see also Smith v. Colvin*, No. TMD-15-1694, 2016 WL 5147195, at *10 (D. Md. 20, 2016) (citing *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012)) (finding harmless error where the claimant failed to demonstrate how the result would have changed had the ALJ properly addressed the claimant's cognitive difficulties in the RFC analysis).  Plaintiff makes no effort to explain how the ALJ's RFC assessment harms her or how further explanation would result in a different outcome.  Thus, the ALJ's failure to consider Plaintiff's subjective ability to walk or stand for only twenty-five minutes in the explanation of the RFC is harmless error.

B. <u>The ALJ Properly Evaluated and Considered Dr. Okigbo's Medical Opinions.</u>

For applications for benefits filed prior to March 27, 2017, ALJs weigh medical opinions in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c).  This regulatory framework requires an ALJ first to follow the "treating physician rule," which mandates that the medical opinion of a treating physician be entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* at §§ 404.1527(c)(2), 416.927(c)(2).  "[T]he treating physician rule is a robust one: '[T]he opinion of a claimant's treating physician [must] be given great weight and may be disregarded only if there is persuasive contradictory evidence.'" *Arakas*, 983 F.3d at 107 (citing *Coffman*, 829 F.2d at 517).  At the same time, the treating physician rule "is not absolute," and an ALJ may afford a treating physician's opinion less weight if there is more persuasive contradictory evidence in the record. *Hines*, 453 F.3d at 563 n.2 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

"Second, if a medical opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) the '[l]ength of the treatment relationship and the frequency of examination'; (2) the '[n]ature and extent of the treatment relationship'; (3) '[s]upportability,' i.e.,

---

facts and inquire into issues necessary for adequate development of the record," *see Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986), so the Court need not consider the issue. *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 727 (4th Cir. 2021) ("[I]t is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel . . . ." (quoting *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010))).

the extent to which the treating physician 'presents relevant evidence to support [the] medical opinion'; (4) '[c]onsistency,' i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to 'issues related to his or her area of specialty'"; and (6) any other factors raised by the parties 'which tend to support or contradict the medical opinion.'" *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384–85 (4th Cir. 2021) (citing 20 C.F.R. § 404.1527(c)(2)(i)–(6)); *see also* 20 C.F.R. § 416.927 (c)(2)(i)–(6). "[A]n ALJ should give adequate attention to each 20 C.F.R. § 404.1527(c) [and § 416.927(c)] factor." *Shelley C. v. Commissioner*, 61 F.4th 341, 355 (4th Cir. 2023) (citing *Dowling*, 986 F.3d at 386; *Triplett v. Saul*, 860 F. App'x 855 (4th Cir. 2021)).

In *Shelley C.*, the Fourth Circuit emphasized that "[m]ere acknowledgement of the regulation's existence is insufficient and falls short of the ALJ's duties." *Id.* at 354. Nevertheless, the Fourth Circuit also made clear that a reviewing court is permitted to infer that the ALJ considered the factors based on the opinion as a whole. *See id.* ("From this discussion, we can infer that the ALJ was aware of the examining relationship that existed between Shelley C. and Dr. Beale, which satisfies 20 C.F.R. § 404.1527(c)'s first factor."), at 355 ("Further, the ALJ also acknowledged that Shelley C. was 'seeing' Dr. Beale. . . . From this, we gather that the ALJ was aware of the examining relationship that existed between Shelley C. and Dr. Beale, thereby satisfying 20 C.F.R. § 404.1527(c)'s first factor."). Here, Plaintiff concedes that the ALJ addressed the consistency and supportability of Dr. Okigbo's opinions as to Plaintiff's diabetes mellitus and rheumatoid arthritis,[8] ECF 11, at 15, 17, therefore I need only review the ALJ's consideration of Dr. Okigbo's treatment relationship (including its length and frequency as well as its nature and extent) with Plaintiff and of her specialization.[9] The ALJ's opinion properly considers each of those remaining factors as required.

The ALJ acknowledged elements of Dr. Okigbo's treatment relationship with Plaintiff that reveal consideration for its length, frequency, nature, and extent. For length and frequency, the opinion notes numerous regular and follow-up examinations of Plaintiff by Dr. Okigbo spanning from 2013 through 2020, including years involving multiple appointments. *See* Tr. 614, 616 (identifying evidence from "an annual examination with Dr. Okigbo"), 610–22 (noting evidence from appointments with Dr. Okigbo in each year from 2013 to 2020 except 2018 and 2019), 612 (referencing appointments with Dr. Okigbo in January, April, July, and September of 2014). The ALJ also referenced a prescription written for Plaintiff by Dr. Okigbo in 1992. Tr. 611. For the nature and extent of the relationship, the ALJ acknowledged Dr. Okigbo as Plaintiff's "primary

---

[8] Contrary to Defendant's assertion that Plaintiff does not challenge the ALJ's evaluation of Dr. Okigbo's opinions on Plaintiff's diabetes mellitus or rheumatoid arthritis, ECF 14-1, at 15 n.4, Plaintiff does in fact lodge this challenge by objecting to the ALJ's evaluation of Dr. Okigbo's "opinions," ECF 11, at 15. Plaintiff does not limit her challenge to any one opinion of Dr. Okigbo. *See, e.g.*, ECF 11, at 17 (contending that the ALJ failed to adequately address the factors "before deciding how much weight to give the *opinions* of Dr. Okigbo" (emphasis added)).

[9] Plaintiff does not point to any "other factors" that the ALJ should have considered under 20 C.F.R. §§ 404.1527(c)(6) or 416.927(c)(6).

care provider." *See* Tr. 616 (describing a letter from Dr. Zan to Dr. Okigbo as "[r]heumatology records . . . reported to primary care"). The ALJ also noted that Dr. Okigbo referred or intended to refer Plaintiff to specialists for neurology, neurosurgery, and rheumatology, Tr. 613–15, indicating the ALJ's consideration of Dr. Okigbo's position at the center of Plaintiff's medical care providers. The opinion as a whole speaks to the ALJ's awareness of Dr. Okigbo's longitudinal insight into Plaintiff's conditions due to their treatment relationship. *See Shelley C.*, 61 F.4th at 354. The ALJ's framing of Dr. Okigbo as a primary care provider also supports the inference that the ALJ also considered Dr. Okigbo's relative lack of specialization, which is the final necessary consideration for weighing medical opinions. Because the ALJ properly considered all of the necessary factors for evaluating a medical opinion, the evaluation of Dr. Okigbo's opinion was supported with substantial evidence.

Plaintiff also argues that the ALJ "erroneously disregarded Dr. Okigbo's opinion that the Plaintiff was unable to work." ECF 11, at 17. For claims filed before March 27, 2017, "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the SSA] will determine that [the claimant is] disabled." 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Such issues are "not medical opinions . . . , but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." *Id.* at §§ 404.1527(d), 416.927(d); *see also Theil v. Comm'r of Soc. Sec.*, No. BPG-16-3150, 2017 WL 2954774, at *2 (D. Md. June 23, 2017) ("The ALJ, however, properly assigned 'no weight' to those portions of Dr. Miller's opinion and therapist Hauss' opinion that concluded that plaintiff could not work."); *Richison v. Astrue*, 462 F. App'x 622, 625 (7th Cir. 2012) (confirming ALJ's discretion to disregard treating physician's opinion that claimant was disabled as an "ultimate determination reserved to the Commissioner"); *Washington v. Kijakazi*, No. 9:21-cv-00737-MHC, 2022 WL 16716678, at *12 (D.S.C. Sept. 7, 2022) ("Specifically, the ALJ appropriately assigned no weight to the portion of Dr. Waid's opinion that Washington was precluded from competitive work, because the issue of disability—which is a legal conclusion—is reserved for the ALJ."). The ALJ is not obligated to give "any special significance to the source of an opinion on issues reserved to the Commissioner." C.F.R. 20 §§ 404.1527(d)(3), 416.927(d)(3).

Here, the ALJ assigned "no weight" to Dr. Okigbo's opinions that Plaintiff was unable to work. Tr. 621. Dr. Okigbo offered this opinion twice: once on a form on which Dr. Okigbo checked a box labeled "temporary incapacity" for employment, specifying a year's duration beginning in July 2014, Tr. 278–80, and again, in May 2016, on Plaintiff's medical chart, similarly identifying Plaintiff as "unable to work" for a limited period, Tr. 399–400.[10] Dr. Okigbo

---

[10] Dr. Okigbo's medical chart states Plaintiff's period of inability to work as lasting from May 9, 2015, to May 30, 2016. Tr. 399. On the form on the next page, Dr. Okigbo checked the box that "this patient [is] disabled or impaired and unable to work." Tr. 400. Dr. Okigbo then listed the dates Plaintiff's impairments were expected to last as beginning on May 9, 2016, and ending on May 9, 2017. *Id.* Regardless of the specific dates to which Dr Okigbo referred, the analysis regarding such statements remains the same.

accompanied this latter record with a letter addressed to whom it may concern, stating that Plaintiff "is presently unable to work," without specifying a duration. Tr. 405. The ALJ's assignment of no weight was narrowly limited to Dr. Okigbo's discrete conclusory opinions on Plaintiff's ability to work. Tr. 621. The ALJ separately addressed Dr. Okigbo's substantive opinions as to Plaintiff's impairments and functions immediately thereafter. Tr. 621–22. Correctly stating that "[t]he final determination of disability is an issue that is reserved for the Commissioner," Tr. 621, the ALJ properly considered (and ultimately) disregarded Dr. Okigbo's opinion on Plaintiff's ability to work.

### C. The ALJ Properly Evaluated Plaintiff's Combination of Impairments.

Plaintiff lastly argues that the ALJ "failed to evaluate the combination of the Plaintiff's impairments." ECF 11, at 19. An ALJ must consider a claimant's impairments in combination when formulating the RFC. *See, e.g.*, *Anthony M. v. Comm'r, Soc. Sec. Admin.*, No. SAG-19-651, 2020 WL 434581, at *3 (D. Md. Jan. 28, 2020) ("[T]he ALJ was required to consider the combined effect of Plaintiff's severe and non-severe impairments in his RFC discussion, including his nonsevere depression and anxiety."). Further, an ALJ must do more than simply summarily conclude that all impairments have been considered in an RFC assessment. *See Mary O. v. Kijakazi*, No. BAH-21-2797, 2022 WL 12039528, at *2 (D. Md. Oct. 20, 2022).

Plaintiff contends generally that the ALJ failed to consider her impairments in combination with one another. ECF 11, at 19. Specifically, Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ "did not address the combination of the Plaintiff's impairments, and did not . . . consider the Plaintiff's medication side effects, chronic pain, and hypoglycemic events in combination with her other impairments." *Id.* at 21.

First, Plaintiff incorrectly assumes that Plaintiff's "medication side effects, chronic pain, and hypoglycemic events" are standalone medically determinable impairments, rather than *symptoms* of impairments, necessitating analysis of their combined effects on Plaintiff's ability to work. *See id.* The ALJ did not designate any of these as medically determinable impairments (severe or otherwise) at step two, and Plaintiff does not argue that the ALJ should have done so. This distinction matters because the ALJ's specific obligation to consider the combined effects on a claimant relates to the claimant's *impairments*, not necessarily the claimant's *symptoms*. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c) (discussing how and ALJ considers a claimant's medically determinable impairments or combination of impairments at step two); *id.* §§ 416.920(a)(4)(ii), (c); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) (noting that, in the RFC analysis, the ALJ "considers only functional limitations and restrictions that result from an individual's medically determinable impairment or *combination of impairments*, including the impact of any related symptoms") (emphasis added)). The regulations define how an ALJ considers a claimant's symptoms at each step of the disability determination process. *See* 20 C.F.R. § 404.1529(d) (outlining how a claimant's symptoms are considered at each step of the sequential evaluation); *see also id.* § 416.929(d) (same). As discussed above, the ALJ properly evaluated Plaintiff's symptoms under that framework. Moreover, the ALJ here *did* consider Plaintiff's "chronic pain, medication side effects, and episodes of hypoglycemia." *See* Tr. 610, 612, 621.

*Milline V. v. Kijakazi*
Civil No. 22-2094-BAH
August 17, 2023
Page 11

Second, Plaintiff must also identify a specific failure by the ALJ in the consideration of her impairments in combination in order to meet her burden.  *See Gregory C. v. Soc. Sec. Admin.*, No. JMC-18-69, 2018 WL 6344205, at *4 (D. Md. Oct. 17, 2018) ("Plaintiff does not explain how the ALJ failed to consider his combination of impairments, or how that failure equates to prejudicial error with respect to his denial of benefits. . . . Ultimately, it is unclear what more Plaintiff believes the ALJ should have done, and his second argument thus fails.").  Here, Plaintiff does not allege any specific deficit in the ALJ's conclusion that Plaintiff "does not have an impairment or *combination* of impairments that meets or medically equals the severity of one of the listed impairments."[11]  Tr. 607 (emphasis added).  While a simple declaration cannot make the ALJ's conclusion so, *see Mary O.*, 2022 WL 12039528, at *2, "absent evidence to the contrary, we take [the Commissioner] at her word."  *Tina P. v. Kijakazi*, No. TJS-21-798, 2022 WL 714373, at *2 (D. Md. Mar. 10, 2022).

## V. CONCLUSION

For the reasons set forth herein, Defendant's motion for summary judgment, ECF 14, is GRANTED.  The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion.  A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge

---

[11] Though this conclusion is from step three and not from the RFC assessment, its logical consequences are fairly applicable to both findings.  *See supra* note 6.